## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JUAN CARLOS CRUZ,

  Petitioner,

v.           Case No. 8:19-cv-2811-VMC-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

  Respondent.

_____/

### ORDER

  Juan Carlos Cruz, a Florida prisoner, timely filed an amended *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 11) and a supporting memorandum (Doc. 15). Respondent filed a response opposing the amended petition. (Doc. 19.) Cruz filed a reply. (Doc. 23.) Upon consideration, the amended petition is **DENIED**.

### I. Procedural History

  A state-court jury convicted Cruz of second-degree murder with a firearm and burglary of a dwelling with a dangerous weapon. (Doc. 19-4, Ex. 14.) The state trial court sentenced Cruz to two concurrent terms of life in prison. (*Id.*, Ex. 16, pp. 4-8.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 21.) Cruz then filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), which the state trial court denied. (*Id.*, Exs. 24, 25.) Cruz did not

appeal that decision. While the motion to correct illegal sentence was pending, Cruz sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 26.) Following a two-day evidentiary hearing, the state trial court denied Cruz's claims, and the state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Exs. 30, 31, 32, 37.)

## II.   **Facts; Trial Testimony**[1]

On the evening of March 25, 2010, Cruz shot and killed Enrique Trevino at a trailer park in Plant City, Florida. Trevino had been dating Cruz's daughter, Lisa, for a few months before the murder.[2] While she was dating Trevino, Lisa had another boyfriend with whom she lived in Tampa, Florida. Lisa and Trevino had made plans to move to Arkansas, and they were supposed to leave on March 25. But Lisa had "a change of heart," and around noon on March 25, she called Trevino to let him know that she "didn't want to go with him." (Doc. 19-3, Ex. 12, pp. 490-91.)

This news upset Trevino. Over the next several hours, he sent Lisa over a hundred text messages, called her approximately eighty times, and left a number of voicemails. The calls and texts upset Lisa. She told her other boyfriend what was going on, and they went to the police station to file a "police report" against Trevino. (*Id.*, pp. 492-93.) They then drove to Cruz's house. Cruz was not home at the time, but his girlfriend Daniele Kushmer was there. Lisa, who was "hysterical," told Kushmer

---

[1] This summary is based on the trial transcript.

[2] For clarity, the Court refers to Lisa Cruz by her first name. No disrespect is intended.

2

about what was going on. (*Id.*, p. 536.) Concerned about how Cruz would "react," Kushmer tried to dissuade Lisa from telling her father about Trevino's behavior. (*Id.*, p. 538.)

At some point, Cruz arrived at the house with his friend Jose Luis Hernandez Juarez. Cruz began talking to Lisa, who was "crying and sobbing." (*Id.*, p. 495.) Lisa told Cruz that she was "having a problem" with Trevino, that he "kept making phone calls and wouldn't leave [her] alone," and that she had filed a police report against him. (*Id.*, p. 498.) Lisa did not, however, show Cruz the text messages Trevino had sent her. Nor did she play him the voicemails. She did not even share "in essence what the messages were or what the general theme was." (*Id.*, p. 526.) Cruz "sat [Lisa] down" and told her that she "had f*cked up" and "should have stayed away from [Trevino]." (*Id.*, pp. 499-500.) Cruz then asked Lisa whether Trevino "still lived" in the same trailer park. (*Id.*, p. 501.)

After this exchange, Cruz told Lisa he was going to drop Juarez off and then go to his sister's house. Cruz and Juarez left in a white Ford Taurus. Cruz dropped Juarez off at his house, then drove to the trailer park where Trevino lived. As Cruz pulled up to the residence, Trevino and his cousin were sitting on the front porch. Cruz got out of the Taurus, said "You motherf*cker," and starting shooting at Trevino with a gun he had brought with him. (*Id.*, pp. 337-38.) Trevino ran into the mobile home and made for the back door. Cruz followed him inside, saying "Stop motherf*cker, stop." (*Id.*, pp. 395-96.) At this point, Cruz encountered Priscilla Vargas, Trevino's cousin's girlfriend. She jumped off the couch and said, "Stop, my son is sleeping in the back

room." (*Id.*, p. 389.) Cruz stood in front of Vargas "for a second" and hit himself in the head. (*Id.*, pp. 390-92.) Trevino then opened the back door and ran out, and Cruz followed him. As soon as Cruz stepped out, he resumed shooting at Trevino. Trevino was shot three or four times, and the cause of death was a "gunshot wound of the torso with perforation of the heart and lung." (*Id.*, pp. 806-07.)

Cruz left the scene and drove back to his house. Approximately an hour had passed between when Cruz left the house and his return. When he arrived at the house, Cruz seemed upset. He asked Lisa and her boyfriend to drive him to Juarez's house. He also told Kushmer, his girlfriend, that he was sorry and that he loved her very much. Kushmer testified at trial that she felt Cruz was "telling [her] good-bye forever." (*Id.*, p. 542.) On the way to Juarez's house, Cruz told Lisa he loved her, instructed her to give her brother his (Cruz's) pickup truck, and asked her to take care of Kushmer.

When Cruz arrived at Juarez's house, he appeared to be nervous and was pacing "back and forth." (*Id.*, p. 690.) Juarez asked Cruz what was wrong. Cruz said he had "shot at a person." (*Id.*) He then asked for a ride to his sister's house. Juarez's girlfriend gave him a ride. On the way to his sister's house, Cruz said that he had shot "somebody in the arm," and that "[i]t had something to do with his daughter." (*Id.*, p. 704.) Cruz also said that he had "f*cked up real bad." (*Id.*, p. 714.) He turned himself in to the police three days later.

On the night of the shooting, police showed Trevino's cousin a photographic lineup that included a photo of Cruz. Trevino's cousin identified someone other than Cruz as the shooter, claiming he was "absolutely sure" this person was the perpetrator.

4

(*Id.*, pp. 560-62.) Priscilla Vargas, however, identified Cruz out of the same photographic lineup, saying that she was "70 percent sure" he was the shooter. (*Id.*, pp. 554-55.) At trial, Cruz relied primarily on an identification defense, arguing that the State failed to prove beyond a reasonable doubt that he was the person who shot and killed Trevino.

## III. <u>Standards of Review</u>

### A. AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law

"if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Cruz's convictions and sentences, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.     Ineffective Assistance of Counsel

Cruz alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Cruz must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Cruz must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review

"gives both the state court and the defense attorney the benefit of the doubt"). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### C.   Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327

(1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## IV. <u>Discussion</u>

### A. Ground One

Cruz argues that the trial court violated his federal constitutional rights by excluding the contents of the text messages and voicemails Trevino sent Lisa in the hours before the murder. Cruz maintains that this evidence "shows the necessary chronological events that led up to the offense(s)," and that its exclusion prevented the jury from making "an informed decision as to [his] motive and intent." (Doc. 15, p. 8.)

Respondent correctly contends that Cruz failed to exhaust this claim. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). For example, "one passing reference to the Due Process Clause . . . is insufficient to notify [a] state court that [a petitioner] [is] raising a federal claim." *Copeland v. Fla. Dep't of Corr. Sec'y*, 851 F. App'x 927, 931 n.1 (11th Cir. 2021).

On direct appeal, Cruz argued that the "content of the messages should have been admitted into evidence as being inextricably intertwined and within the context of providing an intelligent account and explanation of the crime charged, to establish a context and rationale for the events, and to clearly and adequately describe the events leading up to the crime." (Doc. 19-4, Ex. 19, p. 15.) But Cruz couched his argument entirely in terms of state law. He cited only state rules of evidence and state-court opinions, focusing in particular on Florida caselaw concerning the admission of evidence that is "inextricably intertwined with the charges being prosecuted." (*Id.*, pp. 13-15.) To be sure, Cruz claimed in passing that "[d]ue process [would be] better served by giving the jury the complete panorama of admissible evidence." (*Id.*, p. 15.) But "[t]he mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim." *Means v. Sec'y, Dep't of Corr.*, No. 1:14-cv-230-WTH-GRJ, 2018 WL 992027, at *1 (N.D. Fla. Feb. 20, 2018). In short, Cruz failed to "put the state court on notice that he intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015).

Cruz cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground One is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Cruz does not argue that an exception applies to overcome the default. Thus, Ground One is barred from federal habeas review and affords Cruz no relief.[3]

## B.      Ground Two

Cruz contends that trial counsel was ineffective for failing to investigate and prepare a defense of insanity or excusable homicide. Cruz argues that an insanity defense would have been viable because he suffered from "extreme and longstanding mental infirmities." (Doc. 15, p. 14.) And he maintains that Trevino's "threatening messages" could have supported an excusable-homicide defense. (*Id.*, p. 19.) Instead of pursuing these theories, however, trial counsel relied on the allegedly "unsupportable" defense of "mistaken identity." (Doc. 23, p. 19.)

---

[3] To the extent that Cruz seeks relief based solely on the trial court's alleged violation of state rules of evidence, such a claim is not cognizable on federal habeas. *See, e.g.*, *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). Cruz also appears to contend that the trial court violated the Federal Rules of Evidence, but those Rules do "not apply to [a] Florida trial court, so it cannot be said that the trial court 'violated' the Federal Rules of Evidence." *Esty v. McDonough*, No. 3:04-cv-363-MCR-EMT, 2007 WL 1294602, at *43 (N.D. Fla. May 1, 2007).

The state court denied Cruz's claim that trial counsel was ineffective for failing to pursue a defense of insanity or excusable homicide:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to present the affirmative defenses of insanity and/or excusable homicide. Defendant alleges insanity and excusable homicide "were the only logical viable defenses available in this case." Defendant alleges he told counsel and counsel did not do anything to investigate his mental health history, speak to witnesses, or seek mental health hospital records, Baker Act documentation, prescription drug history, or Duval County Jail records. Defendant alleges the insanity defense "would have applied to both specific intent charged offenses [. . .] and, if presented, it would have eliminated the Defendant's culpability requiring the jury to find the Defendant not guilty by reason of insanity."
>
> At the evidentiary hearing, Dr. Richard Carpenter testified and gave his expert opinion concerning the Defendant's psychological and mental health history. Dr. Carpenter testified that following review of the Defendant's medical records, the Defendant has a substantial history of mental health issues. Dr. Carpenter testified that had he been retained by an attorney to do an insanity evaluation, he would have considered that a meritorious request. There was some discrepancy concerning whether Dr. Carpenter had conducted a forensic evaluation, and at the evidentiary hearing, the Office of the Public Defender, Bureau Chief Rocky Brancato, Esq., produced a copy of the report concerning the Defendant, prepared by Dr. Carpenter.
>
> Trial counsel Gregory Hill (hereinafter "Attorney Hill") testified that he retained Dr. Carpenter to conduct an evaluation of the Defendant in this case. Attorney Hill testified that he retained Dr. Carpenter for an evaluation "to explore Mr. Cruz's mental health and whether any of the aspects of that could contribute to a defense [. . .] [a]nd so we asked Dr. Carpenter to look at Mr. Cruz and consult with him whether he was first, competent, second, whether there was [*sic*] insanity issues and also any mitigation." Attorney Hill testified as follows:
>
>> **[3.850 COUNSEL] Q:** You don't recall your testimony when we started this—you don't recall saying you didn't have a conversation with Mr. Cruz about insanity?
>>
>> **[ATTORNEY HILL] A:** I think we talked about insanity in terms of whether it would qualify and whether there was

a basis early on and not very long because there wasn't any basis to pursue that.

**[3.850 COUNSEL] Q:** And what did you base your opinion that there wasn't any basis to pursue it on?

**[ATTORNEY HILL] A:** Well, initially in part, Mr. Cruz's statements during our meetings and then eventually Dr. Carpenter's report and Ms. Fulgara's [the mitigation specialist] assessment and her findings and the lack of records.

Attorney Hill also testified that he spoke with some of the Defendant's family members concerning his mental history and Ms. Warren, an investigator with the Office of the Public Defender, interviewed some of the Defendant's family members. Concerning the theories of defense explored, Attorney Hill testified:

**[3.850 COUNSEL] Q:** Based on the discovery and conversations with Mr. Cruz, what did you develop as a theory of defense?

**[ATTORNEY HILL] A:** We had narrowed it down to, basically, two theories as approached. One was identification and the other was, basically, emotional self-defense of his daughter.

**[3.850 COUNSEL] Q:** Did you proceed to trial on both of those theories or just one?

**[ATTORNEY HILL] A:** No, ma'am. Just the identification.

**[3.850 COUNSEL] Q:** So when was the decision made that you were going to pursue the mistaken ID theory?

**[ATTORNEY HILL] A:** That discussion was held with Mr. Cruz throughout the visits. I believe it was July of 2010—July or August of 2010.

Attorney Hill also testified:

13

[ATTORNEY HILL] A: Mr. Cruz was offered the opportunity to and asked to direct us how he wanted to pursue his defense, and this defense [identification], he approved. He wanted to use on his own behalf [*sic*]. We asked him, since we narrowed it down to a[n] excusable homicide, passion, self-defense-type thing in response to his daughter's threats or the identification. Mr. Cruz indicated he wanted to pursue with the identification. The fact that the witnesses misidentified him, the fact that he had a hoodie and that under those circumstances, he wouldn't have to testify because they wouldn't be able to identify him.

The Court finds Attorney Hill's testimony credible and notes that Attorney Hill had in fact obtained an evaluation of the Defendant prior to trial. The Court does not find that but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 694. The Court finds that Attorney Hill explored various defense options and did not pursue insanity because it was not as strong of a defense, and it appears the Defendant was active in the decision-making process for which defense theory Attorney Hill would proceed with in litigating the Defendant's case, as the Defendant instructed Attorney Hill to proceed with the mistaken identification defense. Therefore, the Court does not find that there is a reasonable probability that the outcome of the trial would have been different. Accordingly, the Court denies claim one of Defendant's "Motion for Postconviction Relief."

(Doc. 19-4, Ex. 32, pp. 4-7 (record citations and emphasis omitted).)

The state court reasonably rejected Cruz's ineffective-assistance claim. To establish deficient performance under *Strickland*, a petitioner must prove "that no competent counsel would have taken the action that his counsel did take." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010). "[T]he fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Id.* Instead, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at

689. Indeed, "[d]efense counsel are allowed a considerable breadth of discretion in choosing their trial strategies." *Fleming v. Kemp*, 748 F.2d 1435, 1451 (11th Cir. 1984).

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Accordingly, "ineffective assistance does not exist under *Strickland* where the defendant ultimately concurred in his counsel's tactical decision or strategy." *Acuna v. United States*, 494 F. App'x 961, 962 (11th Cir. 2012) (citing *Hammond v. Hall*, 586 F.3d 1289, 1327-28 (11th Cir. 2009)). Likewise, a petitioner "who preempted his attorney's strategy choice [] cannot now claim as erroneous the very defense he demanded [his attorney] present." *Foster v. Strickland*, 707 F.2d 1339, 1343-44 (11th Cir. 1983); *see also Nunez v. Fla. Dep't Of Corr.*, 338 F. App'x 793, 795 (11th Cir. 2009) ("As our case law shows, it was a reasonable choice for counsel to not prepare a defense his client had repeatedly refused because he did not think it was an appropriate use of his limited trial preparation time, which is a choice left to counsel's reasonable discretion.").

The state court reasonably concluded that Cruz failed to establish deficient performance. At the postconviction evidentiary hearing, trial counsel testified that, "early on" in the representation, he spoke with Cruz about "whether there was a basis" for an insanity defense. (Doc. 19-4, Ex. 30, p. 77.) Trial counsel also directed his investigator to interview several witnesses and request records from Jackson Memorial Hospital and Mental Health, Inc. Both institutions stated that they had "no records" for Cruz. (*Id.*, p. 71.) In addition, trial counsel retained Dr. Carpenter to perform a competency and sanity evaluation of Cruz. Based on his review of Dr. Carpenter's

report, along with the results of his own team's investigation, trial counsel concluded that "there was no basis to go forward with an insanity defense." (*Id.*, Ex. 31, pp. 17-18; *see also id.*, Ex. 30, p. 77.) Thus, the state-court record reflects that trial counsel conducted a "reasonable investigation[]" of an insanity defense and then made a "strategic choice[]" not to pursue that defense. *Strickland*, 466 U.S. at 690-91.

Trial counsel ultimately settled on two potential defenses: (1) identification and (2) excusable homicide based on Cruz's reaction to the text messages and phone calls his daughter received from Trevino. Trial counsel testified at the evidentiary hearing that "we had a bad and a worse choice in terms of theory, given the factual circumstances that were surrounding us." (Doc. 19-4, Ex. 30, p. 80.) The identification defense gave trial counsel "something to work with" because Trevino's cousin had misidentified the suspect, and Vargas had identified Cruz with "less than a hundred percent" certainty. (*Id.*, p. 81.) In trial counsel's view, the excusable-homicide defense was less promising. He "feared . . . that the time and distance required from when Mr. Cruz first learned of the text messages or phone calls to the time he carried out the shooting at the trailer park would lend itself to the State's argument that it would be premeditated." (*Id.*, pp. 81-82.) Trial counsel discussed "the pros and cons" of both defenses with Cruz, leaving the decision of which defense to pursue to his client. (*Id.*, Ex. 31, p. 9.) Cruz ultimately chose the identification defense because "witnesses [had] misidentified him" and he would not have to testify. (*Id.*, Ex. 30, p. 87.)

On this record, there is no basis to conclude that trial counsel's decision to pursue the identification defense was "so patently unreasonable that no competent

16

attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). The reasonableness of trial counsel's conduct is reinforced by the fact that Cruz himself decided to pursue the identification defense rather than the excusable-homicide defense. *See United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel.").

The state court also reasonably concluded that Cruz failed to establish prejudice. Under Florida law, a defendant pursuing an insanity defense bears the burden of proving, by "clear and convincing evidence," that because of a mental defect, he either "[d]id not know what he . . . was doing or its consequences," or, if he knew what he was doing and its consequences, that he "did not know that what he . . . was doing was wrong." Fla. Stat. § 775.027. Thus, to establish prejudice, Cruz was required to "show a reasonable probability that a jury would have found by clear and convincing evidence that he met the insanity standard at the time of the charged offenses." *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1211 (11th Cir. 2021).

Cruz failed to make the required showing. To be sure, Cruz suffered from mental health issues, including depression, bipolar disorder, borderline personality disorder, and anxiety disorder. And Dr. Carpenter testified at the evidentiary hearing that, had he been "retained by an attorney to do an insanity evaluation" of Cruz, he "would have considered that a meritorious request." (Doc. 19-4, Ex. 30, pp. 12-13.) But, as discussed above, Dr. Carpenter in fact evaluated Cruz before trial, and his

report found it "unlikely that [Cruz's] disorders would have been the type of disorders that would have caused him to fail to know right from wrong at the time of the instant offense."[4] (*Id.*, Ex. 31, pp. 74-75.) Simply put, Cruz pointed to no evidence that his mental illnesses rendered him unable to distinguish right from wrong, or to know what he was doing and its consequences. Thus, Cruz failed to establish "a reasonable probability that a jury would have found by clear and convincing evidence that he met the insanity standard at the time of the charged offenses." *Hayes*, 10 F.4th at 1211.

Cruz also failed to show prejudice from the decision to forgo an excusable-homicide defense. Cruz appears to argue that trial counsel should have pursued the "heat of passion" variant of the defense. That defense excuses a homicide "if the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation." *Villella v. State*, 833 So. 2d 192, 195 (Fla. 5th DCA 2002) (citing Fla. Stat. § 782.03).[5] As trial counsel explained at the evidentiary hearing, however, a heat-of-passion defense was highly unlikely to succeed. Trial counsel correctly noted that Cruz "drove a distance from where he initially learned of the text and phone calls to the victim's residence and then proceeded to the course of action

---

[4] At the evidentiary hearing, Dr. Carpenter testified that he had no recollection of evaluating Cruz in 2010—eight years before the hearing. He explained that it was "possible that [he] just assumed, based on the nature of this request"—that is, the request by Cruz to testify at the postconviction evidentiary hearing—"that [he] had never seen" Cruz. (Doc. 19-4, Ex. 30, p. 17.)

[5] Homicide is also excusable under Florida law (i) "when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent," or (ii) when committed "upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner." Fla. Stat. § 782.03. These two provisions plainly do not apply to the facts of this case.

after that." (Doc. 19-4, Ex. 30, p. 81.) On this record, there is no reasonable probability that a jury would have found that Cruz's killing of Trevino "occur[ed] by accident and misfortune in the heat of passion." *Villella*, 833 So. 2d at 195; *cf. Winland v. Sec'y, DOC*, No. 2:16-cv-2-SPC-MRM, 2019 WL 1330848, at *10 (M.D. Fla. Mar. 22, 2019) (noting that "[t]he facts do not support a heat of passion defense" because the petitioner "removed his guns from his house and placed them in his van. He drove to [the victim's] house and parked on the side of the road waiting for [the victim] to exit. He loaded the shotgun, and once he saw [the victim] exit the house, he drove the van into the driveway, jumped out of the van, pointed the weapon at [the victim], and fired striking the door as [the victim] was reentering the house").

In sum, Cruz does not show that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Thus, he is not entitled to relief on Ground Two.[6]

## C.    Ground Three

Cruz argues that trial counsel was ineffective for failing to seek admission of the text and voicemail messages Trevino sent his daughter in the hours before the murder. Cruz contends that, because the jury did not see the content of those messages, it was deprived of "a valuable tool of relevant evidence necessary for describing in full context what did occur that fateful night." (Doc. 15, p. 20.)

---

[6] The Court notes that it would reach the same conclusion even if *de novo* review applied to this claim.

The state court denied Cruz's claim that trial counsel was ineffective for failing to seek admission of this evidence:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to introduce copies of the 100 text messages and records of the 80 phone calls sent/made by the victim to Defendant's daughter and counsel's failure to introduce "the victim's gang affiliation." Defendant alleges that had counsel raised the insanity defense as argued in claim one, the evidence pertaining to the victim's gang affiliation and his "100 threatening and harassing texts as well as the 80 phone calls he made to the Defendant's daughter hours before the shooting would have been admissible. . ." Specifically, Defendant alleges that these would have been admissible to show Defendant's state of mind. Defendant notes that prior to trial, the State filed a motion seeking to exclude evidence that the victim, Enrique Trevino, was a gang member and that he had "texted the defendant's daughter 100 times and had called her cell phone 80 times on the day prior to the shooting" and it was decided that the evidence would be proffered prior to its introduction. Defendant alleges trial counsel "did nothing to seek the admittance of this evidence" even though he "should have been aware of the availability and significance of the harassing and threatening texts and phone calls." Defendant notes that during deliberation, jurors asked "can we see the text messages." Defendant alleges that if the evidence had been presented at trial, the outcome of the trial would have been different and the jury would have found the defendant not guilty either due to insanity or by excusable homicide.

> At the evidentiary hearing, 3.850 counsel questioned Attorney Hill concerning the State's motion in limine to exclude evidence of the texts and phone calls sent/made by the victim to the Defendant's daughter. Attorney Hill testified as follows:

>> **[3.850 COUNSEL] Q:** Would that information, meaning the information about the text and the voicemail texts, have supported an excusable homicide defense?

>> **[ATTORNEY HILL] A:** It might have.

>> [. . .]

>> **[3.850 COUNSEL] Q:** And so at that Motion in Limine hearing, do you recall the State's argument was that the evidence was not relevant or immaterial?

> **[ATTORNEY HILL] A:** Yes, ma'am.
>
> **[3.850 COUNSEL] Q:** So were you intending the introduce [*sic*] the phone calls, the voicemail or the text messages prior to trial?
>
> **[ATTORNEY HILL] A:** No, ma'am.
>
> **[3.850 COUNSEL] Q:** So you made the argument against the State because the State was requesting to exclude it, and you were arguing for the Judge not to make a decision on that right now, that they should not be excluded?
>
> **[ATTORNEY HILL] A:** Correct.
>
> **[3.850 COUNSEL] Q:** So if you were not intending to introduce them at trial, was there a reason then, just concede to the State's motion?
>
> **[ATTORNEY HILL] A:** Two reasons. Argument No. 1 is that we did not want to disclose to the State our theory and afford them extra time to prepare an attack against [*sic*]. And secondly, we didn't want to tie our hands in the event that something developed or came about prior to the actual trial where we didn't choose to do that.

Attorney Hill also testified that he was instructed to use the mistaken identification defense and that when asked concerning whether Attorney Hill should have gotten a ruling from the Judge about the admission of the text messages, Attorney Hill testified "[u]nder the theory we were approaching, it wasn't necessary." The Court finds that given the decision to proceed with a mistaken identification defense, it is likely that the text messages would not have been admissible, and regardless of their admission, there is a substantial probability that the outcome of the trial would not have been different.

Furthermore, there is a strong presumption that trial counsel's performance is not ineffective. *See Strickland*, 466 U.S. at 690. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might' be considered sound trial strategy." *Id.* "[S]trategic decisions do not constitute ineffective

> assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Here, Defendant has failed to overcome his burden. Accordingly, the Court denies claim two of Defendant's "Motion for Postconviction Relief."

(Doc. 19-4, Ex. 32, pp. 7-10 (record citations and emphasis omitted).)

The state court reasonably rejected Cruz's ineffective-assistance claim. As explained above, Cruz failed to rebut the "presumption" that the decision to pursue the identification defense "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Indeed, Cruz directed trial counsel to pursue that defense after being informed of "the pros and cons" of the strategy. (Doc. 19-4, Ex. 31, p. 9.) As trial counsel noted at the evidentiary hearing, the contents of Trevino's messages would have been irrelevant to the identification defense. In fact, the admission of those messages would have undercut the identification defense by suggesting that Cruz was the shooter. "[C]onstitutionally sufficient assistance of counsel does not require presenting an alternative—not to mention unavailing or inconsistent—theory of the case." *Dill v. Allen*, 488 F.3d 1344, 1357 (11th Cir. 2007) (collecting cases); *see also Salter v. Sec'y, Dep't of Corr.*, No. 8:15-cv-2001-CEH-CPT, 2018 WL 3621040, at *12 (M.D. Fla. July 30, 2018) ("The state court did not unreasonably find that counsel performed competently in declining to present a defense that was inconsistent with the accidental shooting theory.").

For these reasons, the state court's rejection of this claim did not involve an unreasonable application of *Strickland*, nor was it based on an unreasonable factual determination. Thus, Cruz is not entitled to relief on Ground Three.

### D.   Ground Four

Cruz contends that trial counsel was ineffective for failing to properly advise him about his right to testify. He maintains that trial counsel mistakenly informed him that, if he chose to testify at trial, the nature of his prior criminal convictions would be revealed to the jury.

The state court denied Cruz's claim that trial counsel was ineffective for misadvising him about his right to testify:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to properly advise Defendant concerning his right to testify. Defendant alleges that counsel told him that "if he testified the nature of his prior criminal record would have been introduced, not just the number of the prior convictions." Defendant alleges that if he "had been properly advised and told that only the number of his prior convictions would be asked and that the nature of his priors would not have been introduced, he would have testified . . . and provided the basis for the introduction of the ample evidence of his mental illness outlined in [claim one] as well as that he was operating in a blackout during substantial portions of the shooting and that he was not in his right mind after seeing his daughter so distraught and scared." Defendant alleges he also would have testified "that shortly after his daughter told him of the 100 harassing texts and 80 threatening phone calls made to her by the victim he 'lost it' . . . [and that] the harassing texts and phone calls . . . and the victim's gang affiliation and reputation for violence affected his mental state at the time of the shooting." Defendant contends that he "would have testified that he did not know the difference between right and wrong at the time of the shooting because of his mental illness and the victim's aggressive threatening behavior."
>
> Defendant "submits that counsel deprived the Defendant of the authority to testify on his own behalf by misinforming him that if he testified, the

jury would hear specifically that he had two prior felony convictions for driving with [a] suspended license, which would lead to a conviction in this case." Defendant states that although he answered in the affirmative when asked by the trial court if he was satisfied with counsel's advice regarding his choice not to testify, "this answer by the Defendant was given prior to him gaining an understanding of the legal necessity for testifying as set forth above." Defendant contends that "if counsel had properly advised the Defendant as to his right to testify he would have testified and there is a reasonable likelihood that the outcome of the trial would have been different, especially when considered in light of the other grounds raised."

At the evidentiary hearing, Attorney Hill testified:

> **[3.850 COUNSEL] Q:** All right. Talking about Mr. Cruz himself testifying, prior to trial, did you have a discussion with Mr. Cruz about whether he was going to testify?

> **[ATTORNEY HILL] A:** Yes, ma'am.

> **[3.850 COUNSEL] Q:** And when was that discussion?

> **[ATTORNEY HILL] A:** There were a number of jail visits both myself individually [*sic*]. One with Ms. Bradley (phonetic) who was co-counsel and I believe the other one was with Ms. Warren who was the investigator at the time we went through the right to testify, the advantages and disadvantages of doing that.

> **[3.850 COUNSEL] Q:** What exactly did you tell Mr. Cruz?

> **[ATTORNEY HILL] A:** I informed Mr. Cruz as I have as practice that he would be free to testify if he chose to. No one could stop him. I wouldn't stop him. The Judge could not stop him if he so chose. Under the circumstances and with the theory that we were using, I don't recall whether we—I just know, at one point, I think it was August, he indicated that we're using the ID, he wou1dn't need to testify, so he wou1dn't be concerned about it.

> **[3.850 COUNSEL] Q:** Did he, at some point, tell you he wanted to testify?

**[ATTORNEY HILL] A:** No, ma'am.

**[3.850 COUNSEL] Q:** And was it your advice that he testify or not testify?

**[ATTORNEY HILL] A:** I always try and give the client as much information as I can and prepare them if they choose to. In terms of advising him, I don't recall whether I told him not. Maybe. I don't remember.

[. . .]

**[3.850 COUNSEL] Q:** And did you have a specific discussion with him about his prior convictions?

**[ATTORNEY HILL] A:** Yes.

**[3.850 COUNSEL] Q:** What was that discussion?

**[ATTORNEY HILL] A:** Generally, it would be along the lines of you know, if you're cross-examined by the State Attorney and asked if you've ever been convicted of a particular type [of] crime that he would have to respond with a number but not the type of offense.

**[3.850 COUNSEL] Q:** Did you tell Mr. Cruz that the jury would hear what the prior convictions were for if he testified?

**[ATTORNEY HILL] A:** We indicated that if he opened the door to that or if something happened during the course of trial, they could.

**[3.850 COUNSEL] Q:** Did you have a discussion with Mr. Cruz about what he would have testified to had he testified?

**[ATTORNEY HILL] A:** I don't remember if we got to that point. I don't believe we did.

The Court finds Attorney Hill's testimony credible concerning his advisement to the Defendant of the Defendant's right to testify and finds

25

> that the Defendant has failed to establish that counsel's conduct was
> deficient. The Court finds there was no deficient conduct with regard to
> Defendant's third claim of ineffective assistance of counsel, as Attorney
> Hill properly informed Defendant of his right to testify. Accordingly, the
> Court denies claim three of Defendant's "Motion for Postconviction
> Relief."

(Doc. 19-4, Ex. 32, pp. 10-13 (record citations and emphasis omitted).)

The state court reasonably rejected Cruz's ineffective-assistance claim. The court credited trial counsel's testimony about his discussions with Cruz concerning the right to testify. Specifically, trial counsel stated he told Cruz that, "if [Cruz was] cross-examined by the State Attorney and asked if [he had] ever been convicted of a particular type [of] crime," "he would have to respond with a number but not the type of offense." (*Id.*, p. 12.) Trial counsel also testified that he "indicated that if [Cruz] opened the door" to the nature of his prior convictions or "if something happened during the course of trial," the jury might hear "what the prior convictions were for." (*Id.*) To be sure, Cruz contradicted this account at the evidentiary hearing, testifying that trial counsel "told [him] that the jury was going to hear the substance of [his] prior arrest" if he testified. (*Id.*, Ex. 31, p. 48.) But "[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Cruz has not shown by "clear and convincing evidence" that the state court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1).

The state court also reasonably concluded that trial counsel gave accurate advice about Cruz's right to testify. "[A]lthough the issue of ineffective assistance . . .

26

is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, the accuracy of trial counsel's advice is a matter of Florida law concerning impeachment of witnesses with prior criminal convictions. Because the ineffective-assistance claim turns on an issue of state law, this Court is bound by the state court's construction of its own laws. *See Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [counsel] done what [the appellant] argues he should have done. . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal courts should not second-guess them on such matters.").

Even if the issue were the Court's to decide, it would conclude that trial counsel gave accurate advice. "In attempting to impeach a witness (including a testifying defendant), the State may elicit information as to that witness's previous criminal convictions. The questioning is limited to determining if the witness has previously been convicted of a crime, and if so, how many times. If truthfully answered, the State can go no further." *Sneed v. State*, 397 So. 2d 931, 933 (Fla. 5th DCA 1981). But "a witness who falsely testifies about the number of his prior felony convictions may be impeached with certified copies of his convictions." *Hall v. State*, 10 So. 3d 170, 171 (Fla. 5th DCA 2009). Trial counsel's advice to Cruz—that he would only have to state the number of his prior convictions, but that the nature of his convictions might come out if he "opened the door"—was consistent with Florida law on impeachment of

witnesses with prior criminal convictions. Trial counsel cannot be deemed ineffective for giving Cruz correct advice about his right to testify. *See Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 838 (11th Cir. 2018) ("Preston's counsel . . . did not give him any affirmative misadvice because he was correct that Preston's criminal history could come out if he testified and, further, that the details of that history could come out if Preston opened the door.").

Accordingly, the state court's rejection of this claim did not involve an unreasonable application of *Strickland*, nor was it based on an unreasonable factual determination. Thus, Cruz is not entitled to relief on Ground Four.

### E.    Ground Five

Cruz argues that trial counsel was ineffective for failing to interview and call several witnesses whose testimony would have supported a defense of insanity or excusable homicide. The state court denied this claim:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to call "several material witnesses that would have offered testimony in support of an insanity and excusable homicide defense." Defendant alleges that he asked his attorney to call Lisa Cruz, Daniele Kushmer, Jose Chelis Juarez, Crystal Nimeth, and Keith Thompson because "all of these witnesses would have testified that the Defendant was not himself that day (except Mr. Thompson) and that he was acting irrationally, disoriented, confused and bizarre just before and after the shooting (including Mr. Thompson)." Defendant states that these "witnesses were all called as State witnesses at trial, were obviously available for trial, and their testimonies would have supported the defenses of insanity and excusable homicide." Defendant contends that had counsel "properly called the above mentioned witnesses, there is a reasonable likelihood that the outcome of the trial would have been different, especially when considered in light of the other grounds raised in this motion."

There is a strong presumption that trial counsel's performance is not ineffective. *See Strickland*, 466 U.S. at 690. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might' be considered sound trial strategy." *Id.* "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Here, Defendant has failed to overcome his burden.

At the evidentiary hearing, the Court heard testimony from Jose Luis Hernandez, Lisa Cruz, Jose Cruz, and Crystal Nimeth. First, given the Court's findings in claim one that counsel was not ineffective for pursuing a mistaken identification defense, the Court does not find that testimony from the aforementioned witnesses would have been relevant for this type of defense. Attorney Hill testified at the hearing that he did not call any of the aforementioned witnesses "[b]ecause the defense that we were pursuing was identification." The Court finds Attorney Hil1's testimony credible and sound trial strategy. As such, the Court finds Defendant has failed to establish that counsel's conduct was deficient. Further, the Court does not find that had these witnesses been called by Attorney Hill that the outcome of the trial would have been different.

Further, the Court finds that as a matter of trial strategy, Attorney Hill could reasonably conclude that the decision not to call Jose Luis Hernandez, Lisa Cruz, Jose Cruz, and Crystal Nimeth was sound trial strategy, particularly in light of the fact that the testimony at the evidentiary hearing by these individuals was inconsistent or only indicated that the Defendant appeared "desperate," "nervous," "mad," and he was "mumbling." Even if an insanity or excusable homicide defense was pursued, the testimony from the aforementioned witnesses likely would not have changed the outcome of the trial. These behaviors exhibited by the Defendant and described by the witnesses do not necessarily indicate that had they been presented in an insanity or excusable homicide defense, that there is a substantial probability that the outcome of the trial would have been different. The Defendant has failed to demonstrate how counsel performed deficiently pursuant *to Strickland v. Washington*, 466 U.S. 668 (1984). Further, there is not a substantial probability that the outcome of the trial would have been different. *Id.* Accordingly, the Court denies claim four of Defendant's "Motion for Postconviction Relief."

(Doc. 19-4, Ex. 32, pp. 13-15 (record citations and emphasis omitted).)

The state court reasonably rejected Cruz's ineffective-assistance claim. As explained above, Cruz failed to overcome the "presumption" that the decision to pursue the identification defense—and abandon the insanity and excusable-homicide defenses—"might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. According to Cruz, the "material witnesses" would have testified to his "long history of mental health issues as well as his state of mind directly prior to[] and[] immediately after the offenses." (Doc. 15, p. 26.) As the state court correctly explained, however, this testimony would have been irrelevant to the defense that Cruz and trial counsel settled on—namely, that the State had failed to prove beyond a reasonable doubt that Cruz was the shooter. "[T]he fact that [this] defense was unsuccessful does not prove ineffective assistance of counsel." *Ward*, 592 F.3d at 1164. Thus, the state court reasonably concluded that Cruz had not established deficient performance.

The state court's rejection of Cruz's claim did not involve an unreasonable application of *Strickland*, nor was it based on an unreasonable factual determination. Accordingly, Cruz is not entitled to relief on Ground Five.

## F.   **Ground Six**

Cruz contends that trial counsel was ineffective for failing to object to certain comments the prosecutor made during closing argument. According to Cruz, the prosecutor improperly shifted the burden of proof—and violated his right to remain silent—by stating during closing argument that there was "[n]o evidence of sudden or sufficient provocation . . ., certainly not accident or misfortune." (Doc. 11, p. 22.)

The state court denied Cruz's claim that trial counsel was ineffective for failing to make this objection:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to "object to an improper burden shifting closing argument by the State that in effect was a comment on [Defendant's] right to remain silent." Defendant alleges that "the improper statement by the State in this present case, that no evidence had been presented by the defense, unfairly and unconstitutionally, shifted the burden of proof from the State to the defense to prove his innocence." Defendant argues that the "statements in this case was [*sic*] especially egregious where it went to exacerbate defense counsel's inept representation where he failed to introduce evidence of the Defendant's insanity and in support of the excusable homicide defense as set forth above." Defendant states that his attorney "rendered ineffective assistance of counsel for not objecting and moving for a mistrial when the State made the above burden shifting argument" because it "caused an unfair verdict and deprived the defendant of a new trial, or even appellate review of this meritorious appellate issue."
>
> Defendant alleges that counsel should have also objected on the basis that the comment "violated the Defendant's right to remain silent" as "a criminal defendant does not have to supply any evidence of innocence." It is Defendant's contention that under "the totality of the circumstances, the prosecutor's comments reached levels of misconduct and trial counsel rendered ineffective assistance of counsel when he failed to object and/or move for mistrial." Defendant argues that if "counsel ha[d] properly objected to the improper burden shifting argument by the State, as well as the improper statement violating the Defendant's right to remain silent, and moved for mistrial on those grounds, there is a reasonable likelihood that the outcome of the trial would have been different, especially when considered in light of the other grounds raised in this motion."

At the evidentiary hearing, Attorney Hill testified:

> **[3.850 COUNSEL] Q:** Do you recall during closing arguments that the state argued there was no evidence of sudden or sufficient provocation either, certainly not accident or misfortune had been presented at the trial?

> **[ATTORNEY HILL] A:** After reviewing the transcript and preparing for this hearing, yes.
>
> **[3.850 COUNSEL] Q:** In your opinion, could that comment by the state have been interpreted as shifting the burden of proof to the defense to show that there was sudden provocation?
>
> **[ATTORNEY HILL] A:** I don't believe so. The state had never mentioned that Mr. Cruz had never presented a defense, had never presented any evidence and they were going through kind of a checklist of the jury instructions at the time.

The Court has reviewed the testimony, Defendant's claim, and the original trial transcript, page 949, line 8. The Court agrees with Attorney Hill that this statement does not amount to [] burden shifting, but rather argument addressing whether evidence is present on a specific issue. The statement does not allege that defense counsel failed to present evidence, but rather is making a statement regarding the presence or lack of evidence. As such, even if Attorney Hill had objected, the Court finds there is a substantial probability that Attorney Hill's objection would have been overruled by the Court and thus the outcome of the trial would not have been different. Accordingly, the Court denies claim five of Defendant's "Motion for Postconviction Relief."

(Doc. 19-4, Ex. 32, pp. 15-17 (record citations and emphasis omitted).)

The state court reasonably rejected Cruz's ineffective-assistance claim. Cruz contends that trial counsel should have objected to the italicized portion of the prosecutor's comments below:

> When the Judge goes to give you the instructions, the substantive instructions on each crime, the first thing that he is going to give you is an instruction called introduction to homicide. And it's going to tell you that Murder in the First Degree includes the lesser-included crimes of Murder in the Second Degree and Manslaughter and they are all unlawful. However, a killing is excusable or—a killing that is excusable or committed by the use of justifiable deadly force is lawful. And it tells you justifiable homicide and excusable homicide.

. . .

Excusable homicide is the killing of a human being under any one of the following three circumstances: One, the killing is committed by accident and misfortune—accident and misfortune in doing any lawful act. By lawful means with an unusual ordinary caution and without any unlawful intent. This was no accident and there was no misfortune. Eight times he pulled the trigger. He drove over there first. Had to get a gun. He actually stopped, the defendant did, inside the trailer for a moment when confronted by Pricilla Vargas and chose to continue on chasing Henry Trevino. Not an accident or misfortune.

No. 2 requires an accident or misfortune again in the heat of passion upon sudden and sufficient provocation. Sudden and sufficient provocation. *No evidence of sudden or sufficient provocation either, certainly not accident or misfortune.*

And lastly again, the killing is committed by accident and misfortune resulting from a sudden combat if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner. That clearly doesn't apply either.

(*Id.*, Ex. 12, pp. 946-49.)

Trial counsel was not ineffective because there was no basis to object to the prosecutor's statements. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."). "[T]he State may not comment on a defendant's failure to mount a defense because doing so could lead the jury to erroneously conclude that the defendant has the burden of doing so." *Bell v. State*, 108 So. 3d 639, 647 (Fla. 2013). Likewise, because "[a] defendant has the constitutional right to decline to testify against himself in a criminal proceeding," "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." *Rodriguez v. State*, 753 So. 2d 29, 37 (Fla. 2000). The State may, however, comment on "the lack of

credible evidence to support [a defendant's] theory [of the case]." *Hogle v. State*, 250 So. 3d 178, 180 (Fla. 1st DCA 2018); *see also Hayes v. Sec'y, Dep't of Corr.*, No. 18-14752-C, 2019 WL 6249274, at *2 (11th Cir. June 6, 2019) (rejecting claim that prosecutor "shifted the burden of proof in its closing argument by stating that there was no evidence to support [defendant's] alternative theory of the case").

Here, the prosecutor did not comment on Cruz's "failure to mount a defense," nor did she comment on his "failure to testify." *Bell*, 108 So. 3d at 647; *Rodriguez*, 753 So. 2d at 37. Instead, the prosecutor properly "comment[ed] on the jury's duty to analyze and evaluate the evidence and state[d] her contention relative to what conclusions may be drawn from the evidence." *Evans v. State*, 838 So. 2d 1090, 1094 (Fla. 2002). Specifically, the prosecutor (1) correctly stated that "heat of passion" excusable homicide "requires an accident or misfortune . . . in the heat of passion upon sudden and sufficient provocation," and (2) expressed her view that there was "[n]o evidence of sudden or sufficient provocation . . ., certainly not accident or misfortune." (Doc. 19-4, Ex. 12, p. 949.) Because there was no basis to object to these statements, the state court reasonably concluded that Cruz failed to establish deficient performance. Thus, Cruz is not entitled to relief on Ground Six.

## G.   Ground Seven

Cruz contends that cumulative errors by the trial court and trial counsel deprived him of due process and the effective assistance of counsel. The state court denied Cruz's claim that he received ineffective assistance "due to the cumulative effect of counsel's deficient performance and the prejudice rendered therein." (*Id.*, Ex.

32, p. 17.) The state court reasoned that, "[b]ecause [Cruz's] claims of ineffective assistance of counsel lack merit, [his] cumulative error claim also fails." (*Id.*)

Respondent contends that Cruz failed to exhaust his cumulative-error claim to the extent it rests on errors by the trial court rather than trial counsel. The Court need not resolve this issue, because even assuming that Cruz exhausted his cumulative-error claim in its entirety, it fails on the merits. "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, there are no individual errors to accumulate, so Cruz's cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, No. 8:19-cv-39-SDM-AEP, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, Otero proves no error to accumulate to show cumulative prejudicial effect."). Thus, Cruz is not entitled to relief on Ground Seven.

## H.    Ground Eight

Finally, Cruz argues that during the evidentiary hearing on his motion for postconviction relief, the state court violated his right to a fair hearing by declining to

admit the texts and voicemails Trevino sent his daughter. This claim is meritless.[7] The Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll*, 574 F.3d at 1365 (collecting cases). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself—and thus habeas relief is not an appropriate remedy." *Id.* Cruz cannot obtain relief on Ground Eight because it rests entirely on alleged "defects in state collateral proceedings." *Id.*[8]

It is therefore **ORDERED** that Cruz's amended petition (Doc. 11) is **DENIED**. The **CLERK** is directed to enter judgment against Cruz and to **CLOSE** this case.

### Certificate of Appealability
### and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Cruz is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a COA, Cruz must show that reasonable jurists would find debatable both (1) the merits of the

---

[7] Cruz abandoned this claim in his reply brief, stating that he "would concede to the state[']s argument that the claim does attack a collateral proceeding and although exhausted, does not provide a proper basis for relief." (Doc. 23, p. 34.)

[8] Cruz seeks an evidentiary hearing on his claims. The Court determines that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Cruz has not made the requisite showing. Finally, because Cruz is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on February 16, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE